IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 12, 2010 Session

## CITIZENS CHOICE HOME CARE SERVICES, INC. v. UNITED AMERICAN HEALTH CARE CORPORATION

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000996-06     Lorrie K. Ridder, Judge**

_____

**No. W2010-00445-COA-R3-CV - Filed December 6, 2010**

_____

This is an appeal from the grant of summary judgment in favor of Defendant/Appellee. Plaintiff/Appellant filed suit on the basis of Defendant/Appellee's alleged underpayment of fees earned pursuant to a contract between the parties. The trial court found that the contract was not ambiguous as to the applicable fee schedule and that Plaintiff/Appellant's interpretation was incorrect as a matter of law. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed.**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Kevin A. Snider, Germantown, Tennessee, for the appellant, Citizens Choice Home Care Services, Inc.

Jeffrey C. Smith and Tricia T. Olson, Memphis, Tennessee, and Guilford F. Thornton, Jr. and Paul D. Krivacka, Nashville, Tennessee, for the appellee, United American Health Care Corporation.

**OPINION**

This appeal involves the interpretation of a contract. Appellant, Citizens Choice Home Care Services, Inc. ("Citizens Choice"), appeals the order of the trial court granting summary judgment in favor of Appellee, United American Health Care Corporation ("United American").

On September 7, 2000, Citizens Choice and United American entered into a "Transportation Agreement" (the "Agreement"), whereby Citizens Choice agreed to provide transportation to TennCare enrollees for certain non-emergency medical purposes, such as dialysis treatments or doctors appointments. Attached to the Agreement were TennCare Schedules of Payments describing the services and fees applicable to the Agreement. The parties dispute whether the Agreement was "negotiated." However, it is agreed by the parties that United American supplied a standard form contract, Citizens Choice filled in the fee schedule by handwriting the description and rate that it wished to receive for each transport service, and the parties ultimately entered into a complete and final agreement. At issue in this case are the following rates for transportation services rendered, as stated in the Agreement:

>Description: <u>Roundtrip Single Transport</u>
>Rate: $<u>20.00</u> per trip
>
>Description: <u>Roundtrip Multiple Transport</u>
>Rate: $<u>22.00</u> per trip
>
>Description: <u>One way Single / Multiple Transport</u>[1]
>Rate: $<u>10.50</u> per trip

Citizens Choice provided transportation services under the Agreement from approximately April 2001 through March 2006. From April 2001 through September 2005, United American paid Citizens Choice $22.00 per one-way transport, $40.00 per round-trip single transport, and $44.00 per round-trip multiple transport. In September 2005, United American, believing that it had paid the foregoing rates in error, began paying $10.50 per one-way transport, $20.00 per round-trip single transport, and $22.00 per round-trip multiple transport.

On February 27, 2006, Citizens Choice filed its complaint in the Shelby County Circuit Court alleging that, since September 2005, "[i]n breach of the Agreement, [United American] had underpaid [Citizens Choice] for transportation services rendered . . . under the Agreement in [the] approximate amount of $45,000." On April 11, 2006, United American filed its answer and counterclaim, denying the material allegations of the complaint, and asserting that Citizens Choice had over-billed for its services in the amount

---

[1]The fee schedule defines a "single transport" as being "a single TennCare Enrollee" and a "multiple transport" as being "two or more TennCare Enrollees simultaneously." The underlined portions above were handwritten in the designated blanks by Citizens Choice.

of $289,760.80.[2]  United American filed a motion for summary judgment on September 30, 2009.  On October 7, 2009, Citizens Choice filed a motion to amend its complaint, seeking to increase its damages from $45,000 to $5,000,000 and also seeking a continuance to allow more time for discovery.  By order dated November 4, 2009, the trial court denied Citizens Choice's motion to amend, but granted a continuance.  Citizens Choice filed its response in opposition to United American's motion for summary judgment on November 10, 2009, and a hearing was held on November 20, 2009.   By order dated December 11, 2009, the trial court granted United American summary judgment as to Citizens Choice's breach of contract claim, and denied United American summary judgment on its counterclaim.   United American voluntarily dismissed its counterclaim on January 13, 2010.

Citizens Choice timely appeals from the order of the trial court granting summary judgment to United American and presents the following issues for review, as stated in its brief:

> 1) Whether the trial court erred in its interpretation of the parties' Transportation Agreement.
> 2) Whether the Appellee left a number of the Appellant's claims unpaid.
> 3) Whether the Appellee was obligated to provide written notice to the Appellant prior to the reinterpretation of the contract fees.
> (4) Whether the Appellee was obligated to provide oral and/or written notice to the Appellant prior to immediate suspension of the contract in March of 2006 following the Appellee's receipt of service of the Appellant's complaint.
> (5) Whether the Appellant suffered significant losses and damages following the contract's suspension.

A trial court's decision to grant a motion for summary judgment presents a question of law.  Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination.  ***Bain v. Wells,*** 936 S.W.2d 618, 622 (Tenn. 1997).  "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied."  ***Mathews Partners, LLC v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50-51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Tenn. R. Civ. P. 56.04.  The moving party may

---

[2]According to the counterclaim, this amount represented alleged over-billings by Citizens Choice between 2002 and 2005.

accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id.* at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether a factual dispute exists. "Summary judgment procedure is not a substitute for trial. It is only when there is no disputed issue of material fact that a summary judgment should be granted. If such fact issue is present, the matter must not be resolved by a battle of affidavits, but must be resolved by a trial on the merits." *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976) (citations omitted). In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners, LLC*, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.* "Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. S. Cumberland Amoco*, *et al*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)).

In its first issue, Citizens Choice argues that the trial court misinterpreted the contract. Citizens Choice is essentially arguing that the contract is ambiguous. If the contract were found to be ambiguous, and such ambiguity could not be resolved by reference to the established rules of construction used to determine the intent of the parties, then the legal meaning of the contract would become a disputed question of fact. *Owensby v. State Farm Fire and Cas. Co.*, No. E2008-01763-COA-R3-CV, 2010 WL 3565705, at *13 (Tenn. Ct.

-4-

App. Sept. 14, 2010) (quoting *Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693 (Tenn. Ct. App. 2005)). Such a disputed question of fact, if material, would make summary judgment inappropriate. *Stone*, 541 S.W.2d at 599. "'Ambiguity' in a contract is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." *NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997) (citing *Hillis v. Powers*, 875 S.W.2d 273, 276 (Tenn. Ct. App. 1993)). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning, and, in the absence of fraud or mistake, a contract must be interpreted and enforced as written. *Ballard v. N. Am. Life & Cas. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983). When there is no ambiguity, the court is to apply the words used in their ordinary meaning and neither party is to be favored in their construction. *Id.* at 83. The interpretation of a written agreement is a matter of law; therefore, in determining whether an ambiguity exists, our review is *de novo* on the record with no presumption of the correctness of the trial court's conclusions of law. *NSA DBA Benefit Plan, Inc.*, 968 S.W.2d at 795-96 (citations omitted).

Citizens Choice contends that the Agreement provides for rates of $40.00 per round-trip single transport and $44.00 per round-trip multiple transport. To reach this interpretation, Citizens Choice argues that a "round-trip" consists of multiple "trips," and that the rates are calculated under the Agreement on a "per trip" basis. For example, under Citizens Choice's interpretation, a round-trip would include a "trip" departing from, and a "trip" returning to, the point of origin. Both the departing trip and the returning trip would be paid at the rate of $20.00 for a single transport and $22.00 for a multiple transport. Thus, the rate for a round-trip consisting of two trips (a departing and returning trip) would be $40.00 or $44.00 depending on the number of passengers. Citizens Choice maintains that this is the "plain English" interpretation of the Agreement. We disagree. Rather, from our review of the Agreement, it appears that Citizens Choice's interpretation strains plain English, the rules of contract construction, and common sense. We note initially that the Agreement does not define either "trip" or "round-trip." Because we must give the words used in a contract their ordinary meaning, we turn to the Merriam Webster Dictionary for guidance. Merriam Webster defines "round-trip" as "a trip to a place and back usu[ally] over the same route."[3] Pursuant to this definition, a "round-trip" is merely "a trip" and not a collection of trips. Furthermore, this definition contains within it the notion that a round-trip consists of *both* a departure and a return while still being only one trip. We believe this definition comports with the plain meaning of the word "round-trip."

Furthermore, the Merriam Webster definition of "round-trip" comports with the overall structure of the Agreement. In short, the sections of the Agreement cannot be

---

[3]MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1020 (10th ed. 1993).

coherently read together under Citizens Choice's interpretation. The Agreement provides, and Citizens Choice does not dispute, that the rate for a one-way transport is $10.50. If a one-way transport is $10.50, then it is logical to conclude that a round-trip transport would be roughly double that amount, i.e., $20.00 or $22.00. Under Citizens Choice's preferred interpretation, however, the rate for a one-way transport would be $10.50, but the rate for a round-trip transport would be $40.00 or $44.00, or roughly four times the amount of a one-way trip. This result is illogical and especially so when compared to the interpretation outlined above in which the round-trip rate is roughly double that of the one-way rate. We conclude that the latter interpretation more clearly matches the usual, natural, and ordinary meaning of the words expressing the parties' intentions. *See Ballard*, 667 S.W.2d at 82. We further conclude that the language of the Agreement is unambiguous and that the trial court correctly ruled that United American is entitled to summary judgment as a matter of law as to Citizens Choice's breach of contract claim.

Citizens Choice notes that it was reimbursed based upon its preferred interpretation of the Agreement from the time of the contract until September 2005, when United American began reimbursing based on its "reinterpretation" of the fee schedule. We take Citizens Choice's argument to be that some ambiguity must exist if the parties themselves acted pursuant to Citizens Choice's preferred interpretation prior to United American's "reinterpretation." We disagree. As discussed above, the terms of this Agreement are clear. It is well settled that where the terms of a written agreement are clear, the parol evidence rule bars extraneous evidence to "alter, vary, or qualify the plain meaning of an unambiguous written contract." *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990) (citations omitted). Given the unambiguous language of the Agreement, we cannot consider parol evidence as to the parties' prior course of dealings. *See First So. Mortgage Corp. of Tennessee v. Weisser*, No. M2007-01027-COA-R3-CV, 2008 WL 2557370, at *9 (Tenn. Ct. App. June 26, 2008). The fact that United American reimbursed Citizens Choice at a certain rate for a period of time does not mean that it was the rate specified under the terms of the Agreement.

Citizens Choice's remaining arguments on appeal raise several alleged material facts that it claims are in dispute, which would make summary judgment inappropriate. First, Citizens Choice argues that United American left $27,454.00 worth of claims unpaid "allegedly due to untimely filings, enrollee ineligibility, claims not found, and/or claims paid to the wrong provider."[4] Next, Citizens Choice argues that the Agreement required United American to provide notice prior to "reinterpreting" the fee schedule or terminating the Agreement. Finally, Citizens Choice asserts that the measure of its damages after September

_____

[4]This amount appears to be exclusive of the $45,000 claim for damages contained in Citizens Choice's original complaint.

2005 is a question of fact that should have proceeded to trial. Without addressing the underlying merits of these claims, we note that Citizens Choice never raised any of these issues in its pleadings, motions, or arguments before the trial court. "It is well settled in this state that a party on appeal will not be permitted to depart from the theory on which the case was tried in the lower court. Issues not raised or complained of in the trial court will not be considered on appeal." *Tamco Supply v. Pollard*, 37 S.W.3d 905, 909 (Tenn. Ct. App. 2000) (citations omitted). Consequently, we conclude that all of Citizens Choice's remaining issues are waived.

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, Citizens Choice, and its surety.

_____
J. STEVEN STAFFORD, JUDGE